UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Frank MILLER,
Defendant-Appellant.

No. 83–1244.

United States Court of Appeals,
Ninth Circuit.

Argued May 16, 1984.

Submitted July 8, 1985.

Decided Aug. 20, 1985.

Robert C. Furr, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Gilbert Eisenberg, San Francisco, Cal., for defendant-appellant.

Before WRIGHT, HUG and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Michael Frank Miller appeals his conviction for possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Miller contends that the district court erred in denying his pretrial motion to suppress evidence seized pursuant to an unlawful seizure and search.

## FACTS AND PROCEDURAL HISTORY

On June 4, 1983, Miller flew from West Palm Beach, Florida to San Francisco, California. He stopped to change planes in Atlanta, Georgia. At the Atlanta International Airport, one of Miller's suitcases accidentally opened when airline baggage workers attempted to dislodge it from a baggage conveyor belt. A clear plastic bag, partially wrapped in masking tape, fell from the suitcase and was punctured. White powder spilled out of the puncture hole.

Airline employees delivered the suitcase and plastic bag to the airport police, who in turn summoned Agent Paul Markonni of the Drug Enforcement Administration. (DEA). Agent Markonni conducted a field cocaine test on the white powder. The test result was negative. Agent Markonni then squeezed and attempted to bend the plastic bag. He later testified that "It felt solid. It wouldn't bend like loose powder."

After squeezing and bending the bag, Agent Markonni poked his finger into the hole punctured in its corner. He felt another container inside the bag. He used a knife to enlarge the hole, then peeled away layers of plastic and masking tape to expose the inner container. That container was opaque and made of fiberglass. Agent Markonni smelled the container and noticed a chloride odor that he associated with cocaine. When he cut open the container, he discovered crystalline white powder inside. A field test identified the powder as cocaine. Agent Markonni conducted the entire inspection without first obtaining a search warrant.

Based on the positive field test result, DEA agents arrested Miller in San Francisco, and obtained a warrant to search his other luggage. They discovered 18 kilograms of cocaine. Miller was charged under 21 U.S.C. § 841(a)(1) with possession with intent to distribute cocaine.

At his arraignment, Miller moved to suppress the evidence obtained through Agent Markonni's search and pursuant to the warrant. The district court denied the motion. Miller then entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2), preserving his right to challenge the evidentiary ruling. Miller timely filed this appeal.

On May 29, 1984, we issued an order reversing the judgment of the district court and ordering the mandate to issue. Thereafter, on June 24, 1984, we issued an order recalling the mandate and withholding submission pending the Supreme Court's review of our decision in *United States v. Johns*, 707 F.2d 1093 (9th Cir.1983). The appeal has been resubmitted and we have concluded that the Supreme Court's decision in *United States v. Johns*, — U.S. —, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), does not alter our disposition of this case.[1] We find the search unlawful and reverse the district court's denial of Miller's motion to suppress evidence.

DISCUSSION

I

### Standard of Review

The district court concluded: (1) that Agent Markonni's seizure of the plastic bag was proper under the plain view exception to the warrant requirement; (2) that Miller had no reasonable expectation of privacy in the bag because it was a "single-purpose container"; and (3) that seizure of the opaque fiberglass container was also proper under the plain view exception because the container was found inside the plastic bag. These conclusions decided mixed questions of fact and law because the issue in each case is "whether the rule of law as applied to the established facts is or is not violated." *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982)).

In *McConney*, we adopted a functional analysis for determining which standard to apply in reviewing mixed questions of fact and law. The analysis focuses upon the nature of the inquiry. 728 F.2d at 1204. *De novo* review is appropriate when the

question "requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles." *Id.* at 1202. In this case, the district court's factual findings are not alone sufficient to support a decision. The findings have significance only as measured against the complex legal standard governing the plain view exception to the warrant requirement. We therefore apply a *de novo* standard of review in considering both the plain view and single-purpose container questions.

II.

### Application of the Plain View Exception

#### A. Seizure of the Plastic Bag

■ It is well established that the police may under some circumstances *seize* evidence in plain view without a warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. Chesher*, 678 F.2d 1353, 1356 (9th Cir.1982). Plain view seizure is permitted when three requirements are met. First, the officer must have a prior justification for the intrusion that allowed him to view plainly the evidence. *Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038. Second, the discovery of the evidence must be inadvertent. *Id.* at 469, 91 S.Ct. at 2040. Third, it must be "immediately apparent to the police that they have [incriminating] evidence before them." *Id.* at 466, 91 S.Ct. at 2038; *see also Chesher*, 678 F.2d at 1356; *United States v. Wright*, 667 F.2d 793, 796 (9th Cir.1982).

The first two plain view requirements are clearly met here. Agent Markonni simply looked at the plastic bag after it had been exposed. He did not intrude into any place in which Miller had a reasonable expectation of privacy. Furthermore, discovery of the plastic bag was inadvertent

---

**1.** We also note that the Supreme Court's recent decision in *United States v. Montoya de Hernandez*, — U.S. —, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), which considered the detention at the border of a suspected "balloon swallower" narcotics smuggler, does not affect our disposition of this case.

because it was exposed by the accidental rending of Miller's suitcase.

■ The third plain view requirement is also met in this case. In *United States v. Chesher*, 678 F.2d 1353 (9th Cir.1982), we held that where "facts sufficient to provide probable cause to believe an object is incriminating are immediately apparent to the officer, the third *Coolidge* requirement is met." *Id.* at 1357. Probable cause arises when the available facts would warrant a reasonably cautious person's belief that the items in plain view are useful as evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

■ We conclude that Agent Markonni had probable cause to believe that the plastic bag contained contraband. The presence of the white powder, the manner in which the plastic bag and suitcase were taped, and the presence of other similarly packaged bags in Miller's suitcase would have led a reasonably cautious person to believe that the plastic bag contained contraband. Agent Markonni's initial seizure of Miller's suitcase was therefore lawful under the plain view exception to the warrant requirement.[2]

### B. Search of the Plastic Bag

Although the initial seizure of the plastic bag in Miller's suitcase was proper under the plain view exception, we must distinguish the permissible seizure from an impermissible, warrantless search of Miller's possessions. Despite the government's contention that Agent Markonni did not search the plastic bag, his inspection of the

bag and its contents went well beyond the minimal intrusion that is permitted in a plain view seizure.

■ The rationale behind the "immediately apparent" requirement illuminates the distinction between a plain view seizure and a warrantless search. In *Coolidge*, Justice Stewart explained the limitation that the "immediately apparent" requirement placed upon the plain view doctrine: "Of course, the extension of the original justification [for the officer's intrusion] is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 466, 91 S.Ct. at 2038 (citations omitted). Thus, the plain view exception permits seizure of incriminating evidence, but does not authorize a warrantless search for concealed evidence.

We recently applied the distinction between search and seizure in a case presenting facts similar to the instant case that required us to examine the privacy expectations of those who conceal their possessions in closed, opaque containers. In *United States v. Johns*, 707 F.2d 1093 (9th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985),[3] customs officers observed what appeared to be a large-scale drug transaction, smelled marijuana coming from two trucks used in the transaction, and seized several boxes and bags from the trucks. Three days later, without obtaining a search warrant, federal agents opened the containers

---

**2.** Because we are satisfied that the seizure in this case met the requirements of a plain view seizure, we need not consider whether the seizure in this case could also meet the requirements of the "exigent circumstances" exception to the warrant requirement, *see United States v. Licata*, 761 F.2d 537, 542–43 (9th Cir.1985), or any of the other "well delineated" exceptions to the warrant requirement. *See generally Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

Miller does not challenge the lawfulness of the field cocaine test conducted by Agent Markonni on the white powder. The test was prop-

er because Agent Markonni obtained the powder without further exposing Miller's possessions, *United States v. Jacobsen*, 466 U.S. 109, ——, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1984), and because the chemical test itself did not compromise any legitimate expectation of privacy. 104 S.Ct. at 1662.

**3.** The Supreme Court's reversal in *Johns* rested on the automobile exception to the warrant requirement. *United States v. Johns*, —— U.S. ——, ——, 105 S.Ct. 881, 886, 83 L.Ed.2d 890 (1985).

and found marijuana inside. 707 F.2d at 1095.

As in the present case, the government argued that it was unnecessary to obtain a warrant because, under the circumstances, discovery of the contraband did not constitute a search. *Id.* at 1095. We held that while the distinctive marijuana odor and circumstances of the seizure supplied the requisite probable cause to obtain a search warrant, "they did not eliminate the need for one." *Id.* at 1096. The government's suspicion that the containers concealed marijuana, and society's interest in preserving incriminating evidence, outweighed the defendant's possessory interests in the seized items. After seizure, however, the risk of losing the evidence no longer existed. *See* Comment, The Automobile Exception—*United States v. Ross*, 96 Harv.L. Rev. 176, 182 (1982). The defendant's expectation of privacy in the closed, opaque containers then raised a duty to seek a search warrant from a neutral judge or magistrate. *See Johns*, 707 F.2d at 1096; *Texas v. Brown*, 460 U.S. 730, 750, 103 S.Ct. 1535, 1547, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring). *Accord, United States v. Jacobsen*, 466 U.S. 109, ——, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (government agents must obtain warrant before examining contents of package even though they may lawfully seize it to prevent its loss or destruction); *United States v. Licata*, 761 F.2d 537, 544 (9th Cir.1985) (same). *See generally Sequra v. United States*, —— U.S. ——, ——, 104 S.Ct. 3380, 3387, 82 L.Ed.2d 599 (1984) (discussing different interests implicated by searches and seizures).

■ We reject the government's contention that Agent Markonni did not conduct a warrantless search of the plastic bag. By poking his finger into the plastic bag, making an incision into the bag, and making another incision into the inner fiberglass container, Agent Markonni violated Miller's privacy interest in both the plastic bag and the fiberglass container. *Cf. United States v. Jacobsen*, 466 U.S. 109, ——, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1984) (warrantless removal of contents of package upheld because it enabled agent to learn nothing that had not already been discovered by private search).

### C. The Single-Purpose Container Rule

The government contends that the plastic bag was a "single-purpose container" that announced its contents by its very appearance, thereby depriving Miller of any reasonable expectation of privacy in the bag. The Supreme Court first mentioned the "single-purpose container" doctrine in a footnote in *Arkansas v. Sanders:*

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant.

442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979) (citation omitted).

The plurality opinion in *Texas v. Brown* suggested a similar rule, 460 U.S. at 743, 103 S.Ct. at 1543, but did not rely upon *Sanders*. In *Brown*, the arresting officer observed a closed, opaque party balloon in the defendant's car, as well as several small plastic vials, some loose powder, and a bag of party balloons in the glove compartment of the car. *Id.* 460 U.S. at 733–34, 103 S.Ct. at 1538. The officer seized the balloon and arrested the defendant, and a police chemist later identified the substance in the balloon as heroin. *Id.* at 734–35, 103 S.Ct. at 1538–39.

In upholding the *seizure* of the balloon under the plain view doctrine, the plurality stated: "The fact that [officer] Maples could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." *Id.* at 743,

103 S.Ct. at 1543. This language is clearly not an extension of the *Sanders* single-purpose container exception. The *Brown* plurality did not mention footnote 13 of *Sanders,* and it decided a different issue from the one that footnote 13 addressed. Footnote 13 discussed warrantless *searches* of closed containers. The defendant in *Brown* challenged only the seizure, not the search, of the balloon, and the Supreme Court addressed only the seizure issue. *See* 460 U.S. at 744, 103 S.Ct. at 1544; 2 W. LaFave, *Search and Seizure* § 7.2(e) at Supp. p. 244 (1978, 1985 Pocket Part). Consequently, we do not apply the *Brown* rule here.

The Supreme Court recently relied upon both *Sanders* and *Brown* to uphold the warrantless seizure of a package. In *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), employees of a delivery company opened a package that had been damaged by a forklift. They found a tube made of duct tape, cut the tube open, and discovered several transparent plastic bags containing white powder. 104 S.Ct. at 1655. The employees then summoned DEA agents, informed them of their discoveries, and invited the agents to inspect the contents of the package. *Id.* at 1660. The agents removed some of the powder and conducted a field chemical test that identified the powder as cocaine. *Id.* at 1655. The Court concluded that, because a private search had already revealed the contents of the package, the agents' actions constituted not a search, but a seizure of the plastic bags. *Id.* at 1660. Analogizing the circumstances to those surrounding the discovery of the balloon in *Brown,* and "the hypothetical gun case in *Arkansas v. Sanders,*" the Court held that the warrantless seizure was reasonable. *Id.* at 1660–61.

*Jacobsen* is distinguishable from the instant case because the Court there applied footnote 13 of *Sanders* to uphold a warrantless *seizure* that followed an initial private search. The private search could not be attacked on constitutional grounds. *Id.* at 1657. *Jacobsen* does not control the outcome of this case because the question here is whether the single-purpose container exception justifies a warrantless *search* conducted by a government agent pursuant to a proper government seizure.

In *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), a plurality of the Supreme Court rejected the contention that the rule suggested in footnote 13 of *Sanders* justified the warrantless search of two packages, containing marijuana, wrapped in opaque green plastic, and found in the recessed luggage compartment of defendant's station wagon. 453 U.S. at 427–28, 101 S.Ct. at 2846. The arresting officers had smelled and actually seen marijuana in the defendant's car before discovering the packages, and the defendant had then "stated: 'What you are looking for is in the back.'" *Id.* at 442, 101 S.Ct. at 2854 (Rehnquist, J., dissenting).

Writing for the plurality, Justice Stewart observed that expectations of privacy "are established by general social norms," and concluded that, in order to come within the rule, the container must so clearly announce its contents that they are "obvious to an observer." *Id.* at 428, 101 S.Ct. at 2847. The circumstances in which the two packages were discovered arguably supported a stronger showing that they contained contraband than in the present case. Nevertheless, the plurality in *Robbins* refused to permit the incriminating circumstances, or the arresting officer's generalized factual assertions, to obscure the fact that the contents of the two packages were not obvious from their outward appearance.[4]

---

4. The Court held in *Robbins* that the police may not conduct a warrantless search of a closed, opaque container found in a car even if they discover the container during a lawful search of the car. *Robbins v. California,* 453 U.S. 420, 428, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981). Although this precise holding was rejected in

*United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), the court may still properly rely upon the *Robbins* plurality's interpretation of footnote 13 of the *Sanders* opinion. *Ross* reversed *Robbins* on entirely different grounds relating to searches in the limited context of automobile searches and

■ Turning to the present case, the plastic bag revealed a white powder, which a field test found to be innocuous. The powder itself was not transparent. The bag did not have a distinctive shape or odor that identified its contents, other than the white powder that proved to be innocuous. The bag therefore did not, by its outward appearance, announce to the observer that it contained a controlled substance.

The government argues that the contents of the plastic bag were obvious to Agent Markonni because of the circumstances under which the bag was discovered, the way in which it was wrapped, and because of Agent Markonni's considerable experience and expertise in drug enforcement. This argument conflicts with the plurality's analysis in *Robbins,* which measures expectations of privacy with reference to "general social norms," 453 U.S. at 428, 101 S.Ct. at 2847, and calls for an extension of the *Sanders* single-purpose container exception that would ignore the rationale of the exception and undermine the policies behind the warrant requirement.

Law enforcement officers should not be permitted under the single-purpose container rule set out in *Sanders* footnote 13 to conduct warrantless searches of containers that, though unrevealing in appearance, are discovered under circumstances supporting a strong showing of probable cause. Extension of the exception in this manner would undermine the rationale behind footnote 13, which is premised on the idea that there can be no reasonable expectation of privacy when the "outward appearance" of a container, in the circumstances in which it is used, makes its contents obvious. 2 W. LaFave, *Search and Seizure* § 7.2(e) at Supp. p. 245 (1978, 1985 Pocket Part). Because this rationale focuses upon the individual's reasonable expecta-

tion of privacy, which is established by "general social norms," *Robbins,* 453 U.S. at 428, 101 S.Ct. at 2847, the extent to which a container's exterior reveals its contents should not be solely determined either by the circumstances of its discovery, or by the experience and expertise of law enforcement officers.

■ Moreover, to permit such an extension "would increase significantly the risk of erroneous police decisions on whether there is sufficient certainty to permit a warrantless search." 2 W. LaFave, *Search and Seizure* § 7.2(e) at Supp. p. 245 (1978, 1985 Pocket Part). The presence of that risk convinces us that the Fourth Amendment required the impartial judgment of a judicial officer in this case. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).[5]

The warrantless search of Miller's plastic bag and fiberglass container was improper under either the plain view or single-purpose container exceptions. We cannot conclude, moreover, that failure to suppress the evidence obtained from the unlawful search was harmless beyond a reasonable doubt. *See United States v. DiCesare,* 765 F.2d 890, 897 (9th Cir.1985). As a result of the unlawful search, DEA agents obtained tangible evidence that was used as the basis for Miller's arrest and for a warrant to search his other luggage, and Miller was subsequently convicted of possession of cocaine with intent to distribute. The evidence obtained was thus probative of the crime for which Miller was charged. *See id.* at 899. The fruits of the illegal search must therefore be suppressed. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

CONCLUSION

The court's denial of Miller's motion to suppress the evidence was error and the

---

seizures. *Ross,* 456 U.S. at 824, 102 S.Ct. at 2172.

**5.** The search of the container in this case cannot be justified under the good faith exception delineated in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court held in *Leon* that the exclusionary rule does not bar the admission of evidence

seized in reasonable good faith reliance on a search warrant that is subsequently held to be defective. 104 S.Ct. at 3412–23. We do not see how this good faith exception for reasonable reliance on invalid warrants has any application to the warrantless search involved in the instant case.

judgment of conviction is reversed and remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HUG, Circuit Judge, concurring.

I concur in the majority opinion and add these comments.

The clear plastic bag containing white powder justified a seizure, just as the white powder in plain view in a plastic bag justified a seizure in *U.S. v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1984). The subsequent testing of the white powder in this case by the agent did not constitute a search, just as the testing of the white powder did not constitute a search in *Jacobsen*, 104 S.Ct. at 1662. However, the opening of the fiberglass container clearly did constitute a search. It went far beyond testing the powder to determine whether it was a controlled substance.

As I view the single-purpose container exception, a warrantless seizure is permitted because it is so obvious that the contraband is within the container that it is equivalent to seizing contraband itself that is in plain view. In this case, once the suspected contraband, the white powder, was tested and found not to be a controlled substance, there was no justification for going further to search the package without a search warrant.

The plurality opinion in *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841 (1981), stated, "In short, the negative implication of the *Sanders* opinion is that, unless the container is such that the contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment." *Id.* at 427, 101 S.Ct. at 2846, and the Court went on to explain, "a container must so clearly announce its contents, whether by its distinctive configuration, its transparency or otherwise, that its contents are obvious to an observer," *id.* at 428, 101 S.Ct. at 2847. It cannot be said that this package of white powder so clearly announced that within it was a container holding cocaine that it was obvious to an observer. It was,

indeed, suspicious and Agent Markonni's experience with narcotics wrapped in packages with various substances enclosing narcotics would furnish probable cause for a search warrant, but it did not provide a basis for a warrantless search of the opaque fiberglass container within the bag.

My reading of the Supreme Court's cases on this issue convinces me that a far greater degree of certainty is required for a warrantless search of a container than the probable cause necessary to seize it. Justice Stevens' concurring opinion in *Texas v. Brown*, 460 U.S. 730, 751, 103 S.Ct. 1535, 1548, 75 L.Ed.2d 502 (1983), describes it as a "virtual certainty." The plurality opinion in *Robbins* indicated that the single-purpose container doctrine would apply in that case if the package could "only" contain marijuana. 453 U.S. at 428, 101 S.Ct. at 2847. There was not a degree of certainty in this case that the package contained cocaine sufficient to justify a warrantless search under the single-purpose container rule.