**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Michael Frank MILLER,**
**Defendant-Appellant.**

**No. 86–1016.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1986.

Decided March 11, 1987.

As Amended July 10, 1987.

Gilbert Eisenberg, San Francisco, Cal., for defendant-appellant.

Robert Fourr, San Francisco, Cal., for plaintiff-appellee.

Before NELSON, WIGGINS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Michael Frank Miller appeals his conviction of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). His appeal hinges on suppression of evidence obtained pursuant to a warrant whose validity he challenges. The district court denied his motion to suppress. We affirm the district court's denial of his motion. We affirm Miller's conviction.

### Procedural History

Miller was caught in possession of over 66 pounds of cocaine that was virtually pure, with a street value at the time of at least $20 million. In an earlier appeal to this court after entering a conditional plea of guilty, Miller obtained reversal of the district court's refusal to suppress the evidence. *United States v. Miller,* 769 F.2d 554 (9th Cir.1985) (*Miller I*). The basis of the court's opinion was that a warrantless search in Atlanta of a package found in Miller's suitcase was contrary to the Fourth Amendment. "As a result of the unlawful search, DEA agents obtained tangible evidence that was used as the basis for Miller's arrest and for a warrant to search his other luggage.... The evidence obtained was thus probative of the crime for which Miller was charged.... The fruits of the illegal search must therefore be suppressed." *Id.* at 560 (citations omitted).

On remand, the government sought to withdraw a concession it had originally made, that the legality of the warrantless search in Atlanta was conclusive as to the legality of the later search with a warrant in San Francisco. The district court permitted this change of position on the ground that *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), had been decided on July 5, 1984, making a change in the law governing searches based on warrants obtained in good faith. The district court then found that the evidence produced by the San Francisco search should not be suppressed. That evidence was damning: 18 kilograms of cocaine in the suitcases belonging to

Miller which were retrieved at the San Francisco Airport and searched in accordance with the warrant. Miller's conviction was reinstated. He now appeals this new refusal to suppress evidence against him.

## Issues

Should the district court have suppressed the evidence obtained on the basis of the search with a warrant because the warrant should be classified as the fruit of a poisonous tree? Was the district court bound by the government's original concession, by this court's mandate and the law of the case to suppress the evidence?

## Analysis

1. The affidavit of DEA Special Agent Laura M. Hayes, on the basis of which the warrant was issued in San Francisco, set out in detail how a bag had fallen off the conveyor belt in Atlanta and a large taped package had fallen out of the bag which the Eastern Airlines Ramp Supervisor believed contained a large quantity of cocaine; that the bag had been examined by DEA Special Agent Paul J. Markonni, who cut into the package and found what was described as "a white crystalline substance" therein; that Markonni found eleven "similar packages of suspected cocaine" in the bag; that the bag was identified by name tag as belonging to M. Miller, that an Eastern Airlines employee had seen a similar bag processed for Flight # 77 to San Francisco; that the affiant Hayes and DEA Special Agent William J. Gellerman checked all incoming baggage from this flight and found four pieces of luggage tagged as M. Miller's; that they kept three of these bags back and sent one on to the baggage claim area; that Hayes saw Miller making out a claim for missing luggage; that Hayes saw Miller pick up the one suitcase that had been sent up; that Hayes and Special Agent Michael Fiorentino identified themselves as federal drug agents and asked Miller to speak to them; that Miller put down the suitcase and began to walk away from it; that Fiorentino asked Miller how many pieces of luggage he had claimed to have missing and Miller said that he had only a single piece; that in fact Miller had filled out a form claiming five pieces of missing baggage; that at this point Hayes arrested Miller.

Owen E. Woodruff, United States Magistrate, issued a search warrant on the basis of this information. The four pieces of luggage in San Francisco were searched. 18 kilograms of cocaine were discovered in them; an additional 12 kilograms were in the bag that had fallen off in Atlanta.

■ The only statement in the affidavit of Laura Hayes that was based on the alleged search in Atlanta was that Agent Markonni had found a "white crystalline substance" within the package he opened. The substance was not identified as cocaine and could have been harmless powder, as was indeed the white stuff in which the package was encased. The statement about the white crystalline substance was a very small element of the total situation presented to the magistrate by Hayes to show probable cause.

Subtract the statement, which was the only fruit of the illegal search. Magistrate Woodruff then had before him the suspicions of the Eastern Airlines employee and of Agent Markonni that the bag, package, and wrappings suggested the transport of cocaine; Miller's attempt to distance himself from his suitcase in San Francisco Airport; and Miller's blatant lie when asked how many bags of his were missing. Anyone familiar with the frustration felt by a traveler whose bags are missing would not believe that any innocent person would deny that he did not own the very bags for which he had just filed his claim. Magistrate Woodruff had ample cause to issue a warrant. The basis for his action was not dependent on the illegal search.

Miller contends that all the proceedings in San Francisco were the fruit of the poisonous tree, that is, the result of the illegal search in Atlanta. Factually he is mistaken. If there had been no illegal search in Atlanta, there still would have been a stop by DEA agents in San Francisco Airport that would have led to his arrest, to the search warrant, and to the seizure of the 18 kilograms of cocaine.

■ Even if Miller were right in this contention that "but for" the illegal search in Atlanta, the investigation would not have occurred in San Francisco, "but for" causation is not sufficient for an illegal search to invalidate a warrant that rests on grounds independent of the illegality. *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984).

In *Segura*, agents had made a warrantless entry that the district court found to be illegal. But for that entry, the defendants would have had time and opportunity to destroy cocaine and other evidence that was later seized pursuant to a valid warrant. The district court suppressed the cocaine and other evidence as the fruit of a poisonous tree, that is, the illegal entry. The Supreme Court disagreed: "The Court has never held that evidence is 'fruit of the poisonous tree' simply because 'it would not have come to light but for the illegal actions of the police.' " *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); and *Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975)).

In *Segura* the fact that evidence entirely independent of the illegal entry was the basis of the warrant removed any taint from the warrant. The evidence subsequently obtained by warrant was held to be fully admissible. The independent source of the information on which the warrant was based created what the Court said was an "example" that not every illegal search or seizure requires the exclusion of evidence later obtained. *Segura*, 468 U.S. at 805, 104 S.Ct. at 3386. So here the information actually used to get the warrant in San Francisco was independent of Markonni's illegal poke in the package. There is no reason to suppress the evidence secured on the basis of the warrant.

■ 2. But are we precluded from reaching this result by the concession that the government first made that the legality of the warrantless search in Atlanta was conclusive as to the legality of San Francisco search? There are cases that limit our

discretion to reconsider an issue conceded in the District Court. *Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir.1978), teaches that "[w]here an issue is conceded below, it cannot be raised for the first time on appeal." This court said in *United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir.1982), that "[n]othing we say here should be construed as a holding that defense counsel may escape the consequences of a stipulation solely because it was entered into without a full understanding of the law."

These cases, however, do not speak to a situation where this court finds that a party in making a concession has erroneously construed the law. The erroneous concession was withdrawn by the government when the case returned to the district court. In this respect, this case differs from *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), where the state's possibly erroneous concession was never withdrawn and was treated as a bar to the Supreme Court at that stage of review considering a legal theory that might have favored the state. The general rule is that a litigant may not advance an issue for the first time on appeal. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *United States v. Salazar*, 805 F.2d 1394, 1399 (9th Cir.1986). Here the withdrawal was made in the district court where Miller had the opportunity to challenge the government's new position and, if he thought it desirable, to ask for a hearing as to facts material to the new issues raised by the government. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The government raised the independent probable cause theory as an alternative basis to support its motion to reopen the suppression hearing. The defendant responded to the argument in its opposing papers to the government's motion. The government added further arguments to its independent probable cause theory in its reply to the defendant's opposition. The defendant again had an opportunity to rebut that argument in its reply to the government's reply. Clearly, appellate review has not

introduced independent probable cause into this case.

The matter was put magisterially long ago by Justice Brandeis speaking for the Supreme Court and refusing to be controlled by a stipulation entered into by the parties. Justice Brandeis wrote: "If the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative, since the court cannot be controlled by agreement of counsel on a subsidiary question of law." *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289, 37 S.Ct. 287, 289, 61 L.Ed. 722 (1917).

Where, as in this case the question is "the legal effect of admitted facts," the court cannot be controlled by a concession of counsel. "We see no reason why we should make what we think would be an erroneous decision, because the applicable law was not insisted upon by one of the parties." *Smith Engineering Co. v. Rice*, 102 F.2d 492, 499 (9th Cir.1938), *cert. denied*, 307 U.S. 637, 59 S.Ct. 1034, 83 L.Ed. 1519 (1939). The rule has been repeated in a variety of circumstances. Even if a concession is made by the government, we are not bound by the government's "erroneous view of the law." *Flamingo Resort, Inc. v. United States*, 664 F.2d 1387, 1391 n. 5 (9th Cir.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 446, 74 L.Ed.2d 602 (1983). The policy is longstanding and applied whether it is the government or a private party which has made the erroneous concession. *Avila v. INS*, 731 F.2d 616, 620–21 (9th Cir.1984). The government's concession here does not control.

■ 3. That concession, however, was built upon by this court in its first treatment of this case. We then said:

> As a result of the unlawful search, DEA agents obtained tangible evidence that was used as the basis for Miller's arrest and for a warrant to search his other luggage, and Miller was subsequently convicted of possession of cocaine with intent to distribute. The evidence obtained was thus probative of the crime for which Miller was charged. The

fruits of the illegal search must therefore be suppressed.

*Miller I*, 769 F.2d at 560 (citation omitted). Does *Miller I*, preclude reconsideration of the concession? The rule is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal. *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986).

■ Our statement in *Miller I* and the mandate constituted the law of the case. In the interest of finality, economy, and the prevention of repetitious litigation, the law of the case is normally decisive. But the law of the case does not have the same binding force as *res judicata*. As Justice Holmes succinctly put it:

> In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.

*Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). The difference between the law of the case and *res judicata* is that "one directs discretion, the other supersedes it and compels judgment." *Southern Ry. Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 126, 67 L.Ed. 283 (1922).

■ We are dealing then with what is properly a matter of discretion—discretion so vague that the law of the case has been described by the Supreme Court as "an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). It is essentially "a rule of practice and not a limit on authority." 1 B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* § 0.404[1] at 120 (2d ed. 1982). Specifically, to correct "a manifest injustice" the law of the case should be reconsidered. *Arizona v. California*, 460 U.S. at 644, 103 S.Ct. at 1404 (Brennan, J., dissenting). Law of the case should not be applied woodenly in a way inconsistent with substantial justice.

*Moore v. Js. H. Matthews & Co.*, 682 F.2d 830, 833–34 (9th Cir.1982).

■ The concession made by the government, by the issuance of the mandate in *Miller I*, became the law of the case, but the procedural posture of this case affords us the opportunity to correct the substantial injustice that would be done were we to bind the government to its concession. In light of the record before us in this case, we should not reverse the defendant's conviction because the government made a mistake in its presentation of a legal argument.

It would offend "basic concepts of the criminal justice system," *United States v. Leon*, 468 U.S. 897, 908, 104 S.Ct. 3405, 3413, 82 L.Ed.2d 677 (1984), to suppress the evidence here.

■ Miller argues that he should be allowed to withdraw his stipulation that his plea and sentence be reinstated. He observes that the stipulation was made after the district court's order of December 19, 1985, finding the evidence seized pursuant to the San Francisco search warrant to be admissible. The district court reasoned that the good faith exception of *Leon* applied; the court explicitly did not address independent probable cause. Miller now argues that if the district court had based its order on the latter ground, he might have withdrawn his plea and gone to trial. Miller knew, however, that the government had withdrawn its earlier concession; that the government had raised the issue of independent probable cause; and that this court was free to affirm the district court on any grounds supported by the record. That the rationale adopted by this court was other than that used by the district court was not unfair to Miller. An appellate court's adoption of a legal theory different from the district court's is not a material change in the conditions under which the plea was made when that theory was raised in the district court and the defendant had the opportunity to contest that alternative theory before the district court. *Cf. Salazar*, 805 F.2d at 1399–1400 (holding that appellate court cannot affirm conviction on a theory that the court raised

sua sponte at oral argument because defendant would be "unfairly deprive[d] ... of the opportunity to adduce evidence in his favor").

AFFIRMED.