990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank NORIEGA, Defendant-Appellant.
 No. 92-50277.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1993.
Decided March 23, 1993.
 
 Before D.W. NELSON, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 A superseding indictment charged defendant Frank Noriega with possession with intent to distribute approximately one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1), and with structuring financial transactions, in violation of 31 U.S.C. §§ 5313(a), 5322(a), and 5324(3). A jury convicted Noriega on both counts. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 I. Facts
 
 3
 In early 1989, David Davison, Sr., came to live with Donald Simpson at a ranch in McNeal, Arizona. In August, 1989, Davison, Sr., saw bundles of cash, appearing to total in the thousands of dollars, lying on the floor between two beds in the back bedroom of the ranch. Simpson directed Davison, Sr., to bury the money in the backyard.
 
 
 4
 Also in August, 1989, Simpson met with his cousin Gayle Aguilar and her husband Raymond in Tempe, Arizona. Simpson gave the Aguilars $40,000 in cash and told them that if they were to deposit the money in a bank, they should do so in increments of less than $10,000.
 
 
 5
 In November, 1989, Frank Noriega visited Simpson at the McNeal ranch. During Noriega's visit, Simpson directed Davison, Sr., to retrieve the money buried in the yard, which he did. Simpson then took the money and retreated with Noriega to a closed bedroom. Noriega left the ranch the following day.
 
 
 6
 Subsequently, Noriega made four cash deposits of $9,500 each into a savings account over which he had power of attorney. On the day of the last deposit, Noriega caused the bank to issue a $40,000 cashier's check to the Aguilars. Noriega then mailed the cashier's check from his business in El Centro, California, to the Aguilars care of Don Simpson at the McNeal ranch. Because Mrs. Aguilar did not know of Noriega's business in El Centro and had never met or heard of Noriega, she handed the check over to her lawyer, who in turn handed it over to the authorities.
 
 
 7
 While investigating the possibility of drug and money laundering activities on the part of Simpson, United States Customs agents traced the cashier's check back to Noriega and his bank account. Agents obtained a search warrant for Noriega's El Centro business address, a one and one-quarter acre area known as "Frank's Used Equipment."
 
 
 8
 On February 19, 1991, agents executed the search warrant.[1] While executing the warrant, the agents noticed a motor home in one of the bays of a garage-type building. Noriega's son told the agents that his father owned the motor home, that he used it for storage, and that it had not been moved in a long time. The agents entered and searched the motor home.
 
 
 9
 While searching the motor home, agents discovered a loaded shotgun in the driver's seat and a .22 caliber pistol in the passenger's seat. They also discovered in the bathroom vanity a package, labeled 'perla,' that they immediately suspected of being a "kilo" package of cocaine. An agent inserted a penknife into the opaque package and extracted a sample of white powder that field tested positive for cocaine.
 
 
 10
 After expressing his desire to clear the matter up, Noriega was advised of his Miranda rights and gave a tape recorded explanation of the cocaine found in the motor home and of his financial dealings with Simpson. He explained that he found the brick of cocaine in his mailbox in early January. He admitted that he had recognized the package as containing cocaine and that he had placed the cocaine in the bathroom of the motor home. Finally, he claimed that he had not called the police because he was afraid someone was trying to frame him and Simpson.
 
 
 11
 Noriega also acknowledged that he made the four deposits in order to obtain the $40,000 cashier's check. He explained that he sent the $40,000 cashier's check to Simpson because he owed Simpson money. He later told agents that the check was payment on a property loan from Simpson. Noriega had no record of any money owed to Simpson.
 
 
 12
 A grand jury indicted Noriega. A superseding indictment charged Noriega with possession with intent to distribute cocaine and with structuring financial transactions. Noriega moved to suppress evidence seized during the search of his business premises. After initially granting the motion, the court granted the government's motion for reconsideration. Subsequently, Noriega's motions to sever, suppress evidence, and limit testimony were denied in a written order. A jury convicted Noriega on both counts. Noriega appeals.
 
 II. Discussion
 
 13
 I. The Officers' Search of Noriega's Motor Home Did Not Violate the Fourth Amendment
 
 
 14
 Noriega first challenges the search warrant as overbroad because it failed particularly to describe the motor home. "The particularity requirement inquires into the sufficiency of the description of the premises to be searched, and tests whether 'the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' " United States v. Alexander, 761 F.2d 1294, 1300 (9th Cir.1985) (quoting Steele v. United States, 267 U.S. 498, 503 (1925)).
 
 
 15
 In this case, the warrant authorized a search "on the premises" of 1010 South First Street, El Centro, California. So long as Noriega had full control over the entire premises, the officers had probable cause to search the entire premises, notwithstanding the fact that the warrant did not particularly describe the motor home. See id. at 1301; see also United States v. Whitney, 633 F.2d 902, 907-08 (9th Cir.1980) (court upheld a warrant that described the premises to be searched as a single dwelling when it actually was composed of two dwellings because the defendant had full control of both dwellings), cert. denied, 450 U.S. 1004 (1981); United States v. Whitten, 706 F.2d 1000, 1008 (9th Cir.1983) (court upheld a warrant where it authorized the search of a street address with several dwellings so long as the defendants were in control of the whole premises), cert. denied, 465 U.S. 1100 (1984).
 
 
 16
 Moreover, it is well settled that under United States v. Ross, 456 U.S. 798 (1982), a lawful search of fixed premises generally extends to every part of the premises in which the object of the search may be found. See, e.g., United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir.1990) (warrant authorizing premises search includes vehicles on premises); United States v. Griffin, 827 F.2d 1108, 1114-15 (7th Cir.1987) (warrant authorizing search "of the premises" allowed search of yard, toolshed, and automobile), cert. denied, 485 U.S. 909 (1988); United States v. Freeman, 685 F.2d 942, 955 (5th Cir.1982) (warrant for search of premises justifies search of Jeep parked on premises); United States v. Napoli, 530 F.2d 1198, 1201 (5th Cir.) (warrant authorizing search "of the premises" included camper parked in the driveway), cert. denied, 429 U.S. 920 (1976); United States v. Principe, 499 F.2d 1135, 1137 (1st Cir.1974) (outside cabinet "appurtenant to apartment" is within the premises).
 
 
 17
 Because Noriega had full control of the entire 1010 South First Street premises and because it is clear that the objects of the search easily could have been secreted within the motor home, we conclude under Alexander and Ross that the search of the motor home did not violate the Fourth Amendment.
 
 
 18
 II. The Officers Properly Obtained a Warrant to Search the Cocaine Package
 
 
 19
 Noriega next challenges the officers' seizure of the cocaine package from the bathroom vanity of the motor home and subsequent intrusion into that package. We review de novo the lawfulness of a search and seizure. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989)
 
 
 20
 The officers in this case properly seized the package under the plain view doctrine of Coolidge v. New Hampshire, 403 U.S. 443 (1971). However, in cutting open the package with a penknife and removing a sample of the substance contained therein to be field tested, the officers engaged in conduct amounting to a warrantless search under United States v. Miller, 769 F.2d 554 (9th Cir.1985).
 
 
 21
 In Miller, although the court upheld a field test as proper, id. at 557 n. 2 (citing United States v. Jacobsen, 466 U.S. 109 (1984)), the court concluded that by poking his finger into a bag that fell out of the defendant's luggage, making an incision into the bag, and making another incision into a fiberglass container concealed in the bag, a DEA agent had conducted a warrantless search that violated the defendant's interests in both the plastic bag and the fiberglass container. Id. at 558. Because the package did not by its outward appearance announce to the observer that it contained a controlled substance under Arkansas v. Sanders, 442 U.S. 753, 764-65 n. 13 (1979), and Robbins v. California, 453 U.S. 420 (1981), the search in Miller was illegal. 769 F.2d at 558-60.[2]
 
 
 22
 The officers engaged in similar conduct here. However, even if we were to conclude that the officers' warrantless search of the package in this case was illegal, the government properly obtained a Mulder warrant for a second search of the package. In United States v. Mulder, 889 F.2d 239 (9th Cir.1989), officers had illegally performed chemical tests on tablets found in the defendant's luggage. Subsequently, on the basis of probable cause developed prior to and independently of the first unlawful testing, a warrant was obtained for a second chemical test of the tablets. The court rejected the defendant's appeal of the denial of his motion to suppress the results of the second test. Id. at 241.
 
 
 23
 The court initially looked to Murray v. United States, 487 U.S. 533 (1988).
 
 
 24
 The ultimate question ... is whether the search was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal search] or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.
 
 
 25
 Id. at 542 (quoting Murray, 487 U.S. at 542). The court then looked to whether there was probable cause developed independently of the first unlawful testing and concluded there was.
 
 
 26
 The police had lawful custody of the pills and could clearly see that the tablets were marked with the distinctive labeling of methaqualone tablets....
 
 
 27
 Id. at 241.
 
 
 28
 Similarly, the officers demonstrated probable cause developed prior to and independently of the warrantless search of the package in this case. As the district court pointed out, the affidavit supporting the Mulder warrant clearly set out the circumstances of the seizure of the package--where, when, and how it was found. The affidavit also reviewed the affiant's knowledge and expertise. Finally, the affidavit specifically addressed the affiant's knowledge of the association of the word "perla" with cocaine. Accordingly, we conclude that the April 12, 1991, Mulder warrant was valid.[3]
 
 
 29
 IV. The District Court Did Not Err in Denying Noriega's Motion for Severance of Counts
 
 
 30
 Prior to trial, Noriega moved pursuant to Fed.R.Crim.P. 14 to sever count one, which charged him with possession with intent to distribute one kilogram cocaine, from count two, which charged him with structuring financial transactions. The district court denied the motion. We review for an abuse of discretion the denial of a motion to sever. See United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992).
 
 
 31
 Noriega contends that joinder of the counts was improper under Fed.R.Crim.P. 8, because the offenses "are not the same act or transaction, nor was there a common scheme or plan which tied count one and count two together." This conclusory argument is in error. Both counts with which Noriega was charged arose from a common scheme of drug trafficking and both are based on Noriega's drug trafficking transactions. As such, their joinder was proper. See United States v. Disla, 805 F.2d 1340, 1353 (9th Cir.1986) (upholding a refusal to sever wire fraud count from cocaine counts because defendant's alleged participation in cocaine trafficking would have been relevant in a separate trial on wire fraud count).
 
 
 32
 Noriega also contends that he was severely prejudiced by failure to grant the motion to sever. "On appeal, the defendant must show that failure to sever was so manifestly prejudicial that it outweighed the dominant judicial concern with judicial economy and compelled the exercise of the trial court's discretion to sever." United States v. Seifert, 648 F.2d 557, 563 (9th Cir.1980). Noriega offers no support for his claim of prejudice. Because "[t]he party seeking severance bears the burden of demonstrating the need for separate trials," Disla, 805 F.2d at 1353, we reject Noriega's challenge to the denial of his motion to sever.
 
 
 33
 V. The District Court Did Not Err in Denying Noriega's Motion for Judgment of Acquittal
 
 
 34
 At the conclusion of the government's case in chief, Noriega moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a). The district court denied the motion. Rule 29(a) requires the trial court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction." "The trial court must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." United States v. Hazeem, 679 F.2d 770, 772 (9th Cir.), cert. denied, 459 U.S. 848 (1982). We review the trial court's decision using the same test. See id.
 
 
 35
 To support count one, possession with intent to distribute one kilogram of cocaine, the government offered evidence that Noriega possessed the cocaine, expert testimony that quantities in amounts over one ounce are generally held for distribution,[4] evidence that two loaded guns were found in the motor home with the cocaine,[5] and evidence of Noriega's association with Simpson. Based on this evidence, and viewing it in the light most favorable to the government, we conclude that a jury could reasonably find Noriega guilty beyond a reasonable doubt of possession with intent to distribute cocaine.
 
 
 36
 To support count two, structuring financial transactions, the government offered evidence that Noriega structured four $9,500.00 deposits into a nominee account over which he held power of attorney. Noriega admitted to having structured the transactions in such a manner so as to avoid having to complete the forms required for transactions in excess of $10,000.00. To be found guilty, a defendant need only have the intent to avoid reporting the transaction. United States v. Gomez-Osorio, 957 F.2d 636, 643 (9th Cir.1992). Based on this evidence, and viewing it in the light most favorable to the government, we conclude that a jury could reasonably find Noriega guilty beyond a reasonable doubt of structuring financial transactions.
 
 
 37
 VI. The District Court Properly Admitted Testimony Over a Hearsay Objection
 
 
 38
 During trial, Noriega objected on hearsay grounds to the testimony of David Davison, Sr., and David Davison, Jr., regarding statements made to them by Donald Simpson.[6] The district court overruled each of these objections. We review for an abuse of discretion the district court's admission of the statements into evidence over the defendant's hearsay objection. See United States v. Kirk, 844 F.2d 660, 663 (9th Cir.), cert. denied, 488 U.S. 890 (1988).
 
 
 39
 The first of Noriega's objections was to Simpson's statement, relayed by David Davison, Sr., that the money lying on the floor of the ranch bedroom was his. The government admits that this statement was hearsay and was offered to prove the truth of the matter asserted. Nevertheless, the government contends that the statement was admissible under Fed.R.Evid. 801(d)(2)(E) as the statement of a coconspirator.
 
 
 40
 Before a statement can be admitted against a defendant as a statement of a coconspirator, there must be a preliminary showing by independent proof of the conspiracy's existence and the declarant's and the defendant's participation in the conspiracy. United States v. Peralta, 941 F.2d 1003, 1005 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992). These must be shown by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 176 (1987); United States v. Knigge, 832 F.2d 1100, 1104 (9th Cir.1987). In addition, the statement will be admissible against a coconspirator only if the statement was made in furtherance of and during the existence of the conspiracy. Peralta, 941 F.2d at 1006.
 
 
 41
 The government has carried these burdens. The government offered proof that in August, 1989, Simpson had Davison, Sr., bury thousands of dollars in the backyard of his ranch. Thereafter, Simpson's vehicle was stopped and found to contain a very large amount of cocaine. In November, Noriega visited Simpson's ranch at which time the money was retrieved from the backyard, and Noriega and Simpson were seen to retreat behind closed doors. Within two weeks, Noriega began structuring four $9,500.00 deposits into a nominee bank account. Noriega's tax records did not support his contention that the money was derived from his business. Finally, Noriega then tried to funnel $40,000.00 back to Simpson illegally through the Aguilars. Accordingly, we conclude that the statement was properly admitted under Fed.R.Evid. 801(d)(2)(E).
 
 
 42
 The second of Noriega's objections was to Simpson's statement, relayed at trial by David Davison, Jr., that Simpson told Davison, Sr., to go dig the money up from the backyard during Noriega's visit to the ranch. This statement was not offered for the truth of the matter asserted, but to establish that the statement was made or to demonstrate the effect the statement had on the hearer. Accordingly, we conclude that the statement was not hearsay and was admissible. See Kirk, 844 F.2d at 663.
 
 
 43
 VII. The District Court Did Not Err in Permitting Some of Noriega's Testimony to be Read to the Jury
 
 
 44
 During its deliberation, the jury requested to hear a portion of Noriega's testimony, particularly that portion dealing with his intent regarding the cocaine. Over Noriega's objection, the court permitted the jury to hear the testimony. We review for an abuse of discretion a district court's decision on the propriety of reading witness testimony to the jury. See United States v. Castillo, 866 F.2d 1071, 1084 (9th Cir.1988).
 
 
 45
 "In deciding whether to allow the jury to review testimony during deliberations, the court should avoid giving undue emphasis to particular testimony." United States v. Nickell, 883 F.2d 824, 829 (9th Cir.1989). Where, as here, the defendant has failed to point to any testimony in the record that would indicate that the portion read to the jury misled the jury on a material issue, the district court did not abuse its discretion. See id.
 
 III. Conclusion
 
 46
 Accordingly, Noriega's convictions for possession with intent to distribute cocaine and with structuring financial transactions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The warrant authorized a search "on the premises known as 1010 South First Street, El Centro, California." It also authorized the seizure of, among other things, the proceeds of money laundering or drug trafficking and documents of several types evidencing money laundering and drug trafficking
 
 
 [2]
 United States v. Jacobsen, 466 U.S. 109 (1984), is inapposite. In Jacobsen, the government seized from plain view a bag that a private search indicated contained a tube of white powder. Immediately after the seizure, the government removed the tube from the bag and visually inspected its contents. The government then conducted a field test to determine if, in fact, the white powder was cocaine. The Supreme Court upheld both the visual inspection and the field test against a Fourth Amendment challenge primarily because the private search that preceded the government search defeated any expectation of privacy the defendant may have had in the package. See id. at 119-20, 123. Because no private search preceded the officers' search here, we conclude that Miller rather than Jacobsen governs this case
 
 
 [3]
 Because we conclude that the officers validly sought and received a Mulder warrant, we need not and do not address whether the initial search of the cocaine package found in the mobile home was valid
 
 
 [4]
 A jury properly can infer intent to distribute from the quantity of the substance. United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.), cert. denied, 488 U.S. 943 (1988)
 
 
 [5]
 There often is a relationship between trafficking in drugs and the carrying or use of firearms. United States v. Garcia, 909 F.2d 1346, 1350 (9th Cir.1990); United States v. Ramos, 861 F.2d 228, 231 n. 3 (9th Cir.1988)
 
 
 [6]
 According to Noriega's brief, he appeals only those statements to which he made a running hearsay objection