972 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roddie CROOKS, Defendant-Appellant.
 No. 91-30348.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 10, 1992.*
Decided Aug. 12, 1992.
 
 Before TANG, FERGUSON, and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Roddie Crooks appeals his conviction and sentence for possession of five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 BACKGROUND
 
 3
 While on patrol at approximately 9:30 p.m. on July 22, 1990, Portland police officers Moreschi and Oliver saw a car stopped in the middle of the street with the occupant, defendant-appellant Crooks, talking to some people on the sidewalk. The officers turned around and followed the car, which had begun moving. The car displayed expired license tags and made two turns, first a right and then a left, without signaling. The officers activated their overhead lights. Before stopping, Crooks made "some frantic movements underneath the seat."
 
 
 4
 The officers approached Crooks' car. Moreschi testified that he shone his flashlight into the car and saw a clear plastic baggie containing what appeared to be several chunks of crack cocaine on the floor between the mat and the seat rails, by Crooks' feet. The officers removed Crooks from the car and advised him of his rights, which he waived. Moreschi asked Crooks for permission to search the car; Crooks said he could not give permission because the car was not his. The officers handcuffed Crooks, and Moreschi seized the baggie of suspected crack.
 
 
 5
 Crooks was cited for a drug charge and driving with expired license tags and taken into custody. Crooks was charged in a one-count indictment for possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii). After filing a motion to suppress evidence, which the district court denied, Crooks was convicted following a plea to the charge. Crooks later filed motions to set aside the guilty plea and to reopen the suppression hearing. The court denied both motions and sentenced Crooks to 100 months in prison, followed by a three-year term of supervised release.
 
 DISCUSSION
 I. Motion to Suppress
 
 6
 The question of whether adequate grounds existed for a vehicle stop is reviewed de novo. See Territory of Guam v. Ichiyasu, 838 F.2d 353, 355 (9th Cir.1988). The underlying factual findings, however, are reviewed for clear error. Id. The trial court's credibility determinations are entitled to special deference, United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991), and must be upheld unless clearly erroneous, see United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 7
 Where legal issues predominate in a plain view issue, the standard of review is de novo. Where factual considerations predominate, however, the standard of review is clear error. See United States v. Miller, 769 F.2d 554, 556 (9th Cir.1985).
 
 
 8
 A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. United States v. Hoyos, 892 F.2d 1387, 1399 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990). The decision to reconsider a suppression motion is subject to the same standard. See United States v. Buffington, 815 F.2d 1292, 1298 (9th Cir.1987).
 
 
 9
 A. Vehicle stop.
 
 
 10
 Traffic violations constitute criminal conduct sufficient to support an investigative stop. United States v. Baker, 850 F.2d 1365, 1368 (9th Cir.1988). Here, the district court's finding that officers Moreschi and Oliver stopped Crooks for traffic violations was not clearly erroneous.
 
 
 11
 At the hearing on the motion to suppress, Officer Moreschi testified that the officers stopped Crooks' car for three traffic violations: (1) the registration tags on the license plate were expired, in violation of Or.Rev.Stat. § 803.560,[1] (2) the car made a right turn onto Union Street without signaling, arguably in violation of Or.Rev.Stat. § 811.335(1)(b),[2] and (3) the car made a left turn onto Sacramento Street without signaling, in violation of Or.Rev.Stat. § 811.335(1)(b). Moreschi also testified that he had noticed the expired tags before the turning violations occurred. After hearing Moreschi's testimony, the court stated: "With respect to the stop, there's no question that traffic violations constitute criminal conduct which is sufficient to support a stop of the vehicle." The court then denied the motion to suppress.
 
 
 12
 Crooks filed motions to set aside his guilty plea and to reopen the suppression hearing. In support of these motions, Crooks filed an affidavit of his investigator, Parke Eldred, regarding his telephone conversation with Officer Oliver.[3] Eldred's affidavit stated that Oliver had told him that the failure to signal the first turn (the right turn onto Union Street) was the reason for the traffic stop. At the hearings on the motions, the government reiterated Moreschi's testimony that the stop was based on three traffic violations: the expired tags and two unsignaled turns. Without objection from the government, the court received Eldred's affidavit as an offer of proof and made it part of the record. However, the court denied Crooks' motions, stating that it was "satisfied that the result would remain the same, irrespective of the additional evidence that the defendant ha[d] offered."
 
 
 13
 Crooks contends that the district court erred in finding that the officers had adequate grounds to stop the car. Crooks relies on the statement in Eldred's affidavit that, according to Officer Oliver, the officers stopped the car solely because of the first unsignaled turn onto Union Street. Crooks is correct that under State v. Bea, 107 Or.App. 118, 121, 810 P.2d 1328, 1329-30 (1991), failure to signal this turn was not a traffic violation and could not serve as the basis for an investigative stop. However, the court considered both Eldred's affidavit and the testimony of Officer Moreschi, who stated that the officers stopped Crooks for three violations and that he had seen the expired tags first. The court apparently chose to believe Officer Moreschi's testimony. This credibility determination is entitled to special deference, Ramos, 923 F.2d at 1356, and was not clearly erroneous, McConney, 728 F.2d at 1201. The court did not abuse its discretion in denying Crooks' motions to withdraw the guilty plea, Hoyos, 892 F.2d at 1399, and to reopen the suppression hearing, see Buffington, 815 F.2d at 1298.[4]
 
 
 14
 B. Seizure of the cocaine.
 
 
 15
 Crooks contends that the district court erred in finding that Officer Moreschi saw the baggie in plain view. Crooks relies on testimony and photographs taken by Eldred, which he claims prove conclusively that Moreschi could not have seen the baggie from outside the car. Eldred testified that he examined the car and found that in order to make the observation Moreschi claimed he had made, Eldred had to place his head inside the car at the knee level of a passenger. Eldred also took photographs which, according to Crooks, prove that Moreschi could not have seen the baggie from outside the car. On cross-examination, however, Eldred conceded that the pictures might have turned out differently if he had taken them from different angles, and that reflection prevented him from photographing through the windshield.
 
 
 16
 Also at the suppression hearing, Moreschi testified that he saw the baggie from outside the car with the aid of his flashlight. Asked to explain his observation in light of the photographs, Moreschi stated:
 
 
 17
 My vantage point of view was from ... right here on this side of the car.... [T]his mat would be hitting this rail and the rail on the other side here, curling it up, and ... the baggy with the drugs in it would be right between his legs right underneath that seat, which was ... a clear visible shot for me either through this window or through the windshield....
 
 
 18
 Q: So when you actually saw the drugs, were you looking straight through the passenger window on the side, or were you looking through the windshield?
 
 
 19
 A: I can't say exactly for sure, but I know I looked through the window and saw it right down there. And from this vantage point here, if I couldn't have seen it from this window on the side, which I believe I could have, the windshield would have afforded even a better opportunity to see the same thing.
 
 
 20
 The district court found Moreschi's testimony credible. The court stated that it was "satisfied" that Moreschi was able to see the baggie and its contents. The court noted further:
 
 
 21
 It may be that his description of precisely how he saw the bag differs from the physical evidence that has been supported here by the photos, but not necessarily. I think it's very difficult, with a camera, for the court to tell what the officer could see or what parts of it he could see. All that was necessary for him to see was the baggy under the circumstances.
 
 
 22
 Because factual considerations predominated the plain view issue here, and because there was ample evidence to support the district court's finding, it was not clearly erroneous and must stand on appeal. See Miller, 769 F.2d at 556.
 
 II. Sentencing
 
 23
 A district court's interpretation of the sentencing guidelines is reviewed de novo. United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990).
 
 
 24
 Crooks contends that the district court erred in concluding that 18 U.S.C. § 3553(a) did not give it the power to impose a "just punishment" below the Guideline range mandated by 18 U.S.C. § 3553(b). In essence, Crooks argues that 18 U.S.C. § 3553(a) allows the district court to disregard the Guidelines when it deems the resulting sentence too harsh. This contention lacks merit.
 
 The Supreme Court has stated:
 
 25
 The Sentencing Reform Act of 1984 revolutionized the manner in which district courts sentence persons convicted of federal crimes. Before the Act, Congress was generally content to define broad sentencing ranges, leaving the imposition of sentences within those ranges to the discretion of individual judges, to be exercised on a case-by-case basis. Now, under the "guidelines" system initiated by the Act, district court judges determine sentences based on the various offense-related and offender-related factors identified by the Guidelines of the United States Sentencing Commission.... The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...."
 
 
 26
 Burns v. United States, --- U.S. ----, 111 S.Ct. 2182, 2184-85 (1991) (quoting 18 U.S.C. § 3553(b); citations omitted; emphasis added); see also United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc) (explaining the relationship between 18 U.S.C. § 3553(b) and § 3553(a)).
 
 
 27
 Here, the district court identified the Sentencing Guideline range at 100 to 125 months based on an Offense Level Total of 24 and a Criminal History Category of VI. The court imposed a sentence of 100 months and a three-year term of supervised release, after granting Crooks' requests for credit for time served, concurrent sentences and a two-point reduction for acceptance of responsibility. The court found no basis for a downward departure and Crooks presented no mitigating factors that the Sentencing Commission had not adequately considered in formulating the Guidelines. The district court properly concluded that it did not have the power to deviate from the Guidelines in this case.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The members of the panel unanimously agree that this case is appropriate for submission on the briefs and record per Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Or.Rev.Stat. § 803.560(b) provides:
 A person commits the offense of improper display of validating stickers if the person owns or drives a vehicle on which the display of registration stickers described under O.R.S. 803.555 provides proof of valid registration and:
 * * *
 (b) the stickers are displayed on the vehicle after the registration period shown on the stickers.
 
 
 [2]
 Or.Rev.Stat. § 811.335(1)(b) provides:
 (1) A person commits the offense of making an unlawful or unsignaled turn if the person is operating a vehicle upon a highway and the person turns the vehicle right or left when:
 * * *
 (b) The person fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning.
 
 
 [3]
 Officer Oliver himself never testified at any hearing
 
 
 [4]
 The district court also did not abuse its discretion in refusing to hear Crooks' claim that the traffic stop was a pretext to search the car. See United States v. Lillard, 929 F.2d 500, 502 (9th Cir.1991) (no pretext stop where officer testified that he knew about defendant's suspected methamphetamine manufacturing but would have stopped defendant anyway because of his speeding and careless driving)