**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Martin Luther MILLS, III, Defendant–Appellant.**

No. 99–10336.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 2001.

Submission Withdrawn Aug. 24, 2001.

Resubmitted Jan. 22, 2002.

Filed Feb. 6, 2002.

Michael A. Weight and Shanlyn A. Souza, Assistant Federal Public Defenders, Honolulu, HI, for the defendant-appellant.

Michael K. Kawahara, Assistant U.S. Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

GOODWIN, Circuit Judge.

Martin Luther Mills III appeals his conviction for manufacturing and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841. He argues that the district court abused its discretion by denying his motion to dismiss based on pre-accusatory delay, his motion for a new trial based on a juror's introduction of extrinsic evidence into jury deliberations, and his motion to suppress evidence found in his backpack. He also contends that 21 U.S.C. § 841 is facially unconstitutional and that the court violated his Fifth and Sixth Amendment rights when it enhanced his sentence due to drug quantity and a prior conviction not proved at trial. Mills was sentenced to 10 years in prison. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Mills was charged with manufacturing and possessing with intent to distribute marijuana. The charges were based on the cultivation of 451 marijuana plants on

the island of Kauai. State Department of Land and Natural Resources ("DLNR") officers had "staked out" the growing site and its access trail. Mills was arrested after walking onto the trail at night. He claimed that he had been "deer stalking."

The marijuana was located in the Makaha Valley. It would take 45 minutes to an hour and a half to walk to it from the road. The area was remote and wild and fell within a state-owned hunting zone for wild boar, deer, and goats. The nearest town was some fourteen miles away.

The growing site included an overnight shelter, made from branches and tarpaulins, which contained a cot, bedding, tools and supplies. Two above-ground water tanks uphill from the garden served as rainwater-collecting and fertilizer-mixing tanks. Plastic pipes carried the water to the plants. The pipes branched out and were equipped with garden hose fittings for distribution of water. All the hose fittings and the plastic parts of a garden hose sprayer had been painted a dark color, to camouflage them to some degree. Mills's fingerprint impression was found in the paint on the sprayer.

In early September 1993, a hunter reported his discovery of the marijuana. Police located the patch from a helicopter, then examined the site on foot. A 24-hour surveillance of the area began. Two steep trails led from the paved road downhill through heavy growth to the garden.

The trail head on which Mills was arrested was inconspicuous. Officer Martinez, who arrested Mills, had to stand right beside the trail head to see it. The only indications of the trail head were openings in the vegetation, pushed-down grass, and bent branches. The second trail head was easier to find. During his stakeout commencing three to four days before Mills's arrest, Officer Martinez saw only five vehicles on the road. None of the vehicles stopped by either trail head. Officer Martinez saw no deer or signs of deer.

At about 7:00 p.m. on October 21, 1993, a car stopped right in front of the inconspicuous trail head. Mills got out of the car and took a backpack out of the trunk. The driver sped off as soon as Mills shut the trunk. At no time after leaving the car did Mills appear to communicate with the driver. Mills entered the trail head holding a flashlight. He headed toward Officer Martinez. When Mills was about 8 to 10 feet from the officer, the beam of his flashlight lit the officer and Mills yelled, "Oh, shit." Mills ran down the trail onto the road. Officer Martinez ran after him and yelled "Halt, police." Mills stopped on the road and, when asked his name, Mills repeatedly said that the officer should know who he was. After Officer Martinez explained that he was not from Kauai, Mills gave his name. Mills said that he had been "deer stalking" and had been on his way to the water tank where, he said, deer went for water.

Officer Martinez testified at trial that he did not believe Mills's story because he had not seen any deer and because he did not see how water could pool in the area near the tank because of pine needles and cones on the ground. He also thought it significant that Mills had come to the less conspicuous of the two trail heads. Officer Martinez also testified that, because Makaha Ridge was a desolate and wild area, a person dropped off at the obscure trail for an innocent purpose would have kept a car there for a return trip. The officer said he believed that Mills was one of the marijuana growers and that the manner of his arrival at the trail head had been designed "in order to conceal his presence in the area."

Officer Martinez asked Mills if he would consent to a search of his backpack. Mills refused. Martinez asked Mills whether he had been arrested before. Mills replied that he had been arrested for commercial promotion of marijuana. Officer Martinez then arrested Mills.

The police later obtained a warrant to search Mills's backpack. In it, they found a hairbrush with strands of Mills's hair. Bedding materials recovered by DLNR officers from the shelter at the marijuana site also had strands of hair on them. A police department expert compared the hairs and concluded that they could have come from the same person.

A fingerprint specialist from the Drug Enforcement Agency (DEA) also compared Mills's fingerprints to the one found in the paint on the garden hose sprayer in the patch's shelter. He testified that the latter print was made by Mills's left index finger.

The police also, with a warrant, searched Mills's home. During the search, they collected four packs of the same brand of cigarettes that they had found in Mills' backpack and in the marijuana patch, garden hose couplings and valves of the same brand and type used in the garden hose sprayer and irrigation system of the marijuana patch, a flashlight bulb of the same brand and type used in the headlamp recovered from the shelter, and sneakers and T-shirts of the same size as sneakers and T-shirts found in the shelter.

Mills was not indicted until five years after his arrest. He defended himself and filed pretrial motions. The district court denied a motion to dismiss for pre-indictment delay and to suppress the evidence obtained from his backpack. Mills maintained that he was prejudiced by the delay because a witness, Douglas Gordon Duff, had died during the delay. Mills claimed that Duff would have sworn that he was the patch's sole cultivator. Mills also claimed that two living witnesses would testify that Duff had told them that "If push comes to shove, I'll tell them it's my patch ... I won't let him [Mills] take the fall for that."

In 1985 or 1986 Mills and Duff had been convicted for conspiring to manufacture and possess with intent to distribute fifty or more kilograms of marijuana. Duff did not testify at their joint trial.

During the hearing on the dismissal motion, the prosecution questioned whether Mills would actually raise the "Duff defense", because "it clearly open[ed] up in rebuttal relitigating Mills and Mr. Duff's prior conviction and permitting the United States to put on testimony of their prior conspiratorial relationship." The government also argued that the "Duff defense" supported the prosecution's claim that both Mills and Duff were involved in the criminal activity in the Makaha Valley. Mills did not attempt to present Duff's alleged statements at trial through the proffered witnesses. He told the district court before trial that he did not intend to raise the "Duff defense."

Jury deliberations began at approximately 2:20 p.m. on April 2, 1999. Roughly an hour later, at 3:25 p.m., the jury sent a note to the court that stated that "Ms. Patricia Griffin has seen Mr. Mill [sic] around in Kauai. Need guidance on implication of her situation in her decision in the case." From 4:15 p.m. until 6:55 p.m., the district court conducted separate interviews of Griffin, the foreperson, and the remaining ten jurors.

Griffin said that she had realized as the trial progressed that she had seen Mills on Kauai previously and that they lived in the same neighborhood. Although Griffin had disclosed this information to the other jurors, she had not told the court during voir

dire.[1] Griffin described Mills to the other jurors as "a little bit weird." She said that "he was probably an old hippie" who smoked marijuana, that he was "fat and disgusting," and that he had worn a ponytail and pajama-like clothing in public. The foreperson advised the court that the jurors were concerned about Griffin's "knowledge of Mr. Mill's[sic] appearance and conditions that was not brought up in the evidence."

The district court asked each juror separately about his or her recollection of Griffin's statements and instructed each to disregard them in reaching a verdict. The court dismissed Griffin from the jury. The remaining eleven jurors affirmed that they would be able to disregard Griffin's statements. After completing the separate interviews, the court advised the jury as a whole of Griffin's release and told the jurors they would begin their deliberations again the next Monday. The court reiterated that they must disregard Griffin's comments.

In due course, the jury returned a guilty verdict. Because of his prior felony marijuana conviction and the quantity of marijuana involved, Mills was sentenced to the mandatory minimum term of 120 months (10 years) in prison.

### I. Pre-indictment delay

■ We review for abuse of discretion the trial court's denial of Mills's motion to dismiss for pre-indictment delay. *United States v. Ross*, 123 F.3d 1181, 1184 (9th Cir.1997). Because Mills did not show actual prejudice, we need not consider the Government's reasons for the delay. *See*

*United States v. Moran*, 759 F.2d 777, 782 (9th Cir.1985); *see also United States v. Mills*, 641 F.2d 785, 788 (9th Cir.1981).

■ As this court has observed, "showing actual prejudice entails proof by 'definite and non-speculative evidence' that loss of testimony has meaningfully impaired the defendant's ability to defend himself." *United States v. Bischel*, 61 F.3d 1429, 1436 (9th Cir.1995). Mills's claim that he had two witnesses who would testify that Duff had intended to take sole responsibility, but who never did, falls short of "definite and non-speculative." Moreover, the jury still could have convicted Mills, despite an admission by Duff, if it believed that Mills and Duff were cultivating and planning to distribute marijuana together. *See Ross*, 123 F.3d at 1185–86 (holding that the deceased witness's supposed testimony was speculative at best and did not preclude the defendant's own criminal involvement). Finally, at trial Mills did not seek to introduce evidence that Duff had been the sole cultivator.

### II. Probable Cause to Arrest

We review de novo a district court's determination of probable cause to arrest. *See Guam v. Ichiyasu*, 838 F.2d 353, 355 (9th Cir.1988). The underlying facts are reviewed under the "clearly erroneous" standard. *See id.* An arrest is supported by probable cause if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the[suspect] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550

---

**1.** There is no claim and no indication in the record that Griffin lied in answering a material question on voir dire. *Cf. United States v. Henley*, 238 F.3d 1111, 1121 (9th Cir.2001) (explaining that a defendant is "entitled to a new trial" if the defendant can show that a

juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause" (citation and internal quotation marks omitted)).

(9th Cir.1992) (citation and internal quotation marks omitted).

■ Officer Martinez had probable cause to arrest Mills. Mills argues that his mere presence on a path that led, after a forty-five to ninety minute hike, to a marijuana patch was insufficient to give the officers probable cause. Indeed, in many cases, presence on a path so far from the crime scene would not give officers probable cause to arrest. However, here, the path was in a remote and wild area, was relatively obscured, and led to the marijuana patch. Mills had been dropped off silently and swiftly at the inconspicuous trail head and had appeared to be very familiar with the area even though the path was not clearly marked. Mills arrived in time to reach the marijuana patch (if that was his destination) at just the right time of evening to take advantage of its bedroom-style shelter. When he was confronted by the police and asked his name, Mills responded that they already knew who he was, a response that permits an inference that Mills understood that the police "got their man." Moreover, before he decided to arrest Mills, the officer knew that Mills had been arrested previously for commercial promotion of marijuana, information that cast further doubt on Mills's deer-stalking explanation. When combined with all of this supporting evidence, the fact that Mills was walking on the path toward the marijuana patch gave the officer probable cause to arrest him.

After Mills's arrest, the search and seizure of Mills's backpack was not " 'come at by exploitation of [any] illegality.' " *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting Maguire, Evidence of Guilt 221 (1959)). The police searched Mills's backpack pursuant to a warrant obtained after his arrest. Although the facts that supported probable cause for his arrest were essentially the same as those that supported the issuance of the warrant, the arrest itself was not the basis for the warrant to search Mills's backpack. Mills does not argue that the warrant was defective.

## III. Juror Misconduct

■ The denial of a motion for a mistrial based on juror misconduct is reviewed for abuse of discretion. *See United States v. Hanley,* 190 F.3d 1017, 1031 (9th Cir. 1999). In cases where one juror exposes other jurors to extrinsic evidence, appellate review has two components. First, the court "must consider the entire record in determining whether the state has met its burden of demonstrating that extrinsic evidence did not contribute to the verdict." *Dickson v. Sullivan,* 849 F.2d 403, 405–06 (9th Cir.1988). Next, the court "must accord special deference to the trial judge's impression of the impact of the alleged misconduct." *Hanley,* 190 F.3d at 1031 (citation and internal quotation marks omitted).

■ Juror Griffin improperly introduced "extrinsic evidence" to the other jurors when she told them that Mills used to look like a fat old hippie with a ponytail and that he wore pajamas in the grocery store. Mills was entitled to a new trial "if there existed a reasonable possibility that the extrinsic material could have affected the verdict." *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979). The inquiry is objective: a court "need not ascertain whether the extrinsic evidence actually influenced any specific juror." *United States v. Keating,* 147 F.3d 895, 901–02 (9th Cir.1998).

■ The district court's interviewing of the jurors to determine exactly what juror Griffin had said, and whether the jurors could ignore her statement in deciding the

case, was a proper exercise of caution. We have held that jurors "may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts." *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981) (per curiam); *see also Vasquez,* 597 F.2d at 194. However, in *Jeffries v. Wood,* 114 F.3d 1484, 1491 (9th Cir.1997) (en banc), this court weakened the precedential value of the above-quoted passage. The *Jeffries* court merely stated: "Jurors' testimony that extrinsic evidence is not harmful is not controlling." *Id.* It relied on two out-of-circuit cases for support, both of which made clear that a district judge could interview jurors to determine the effect of extrinsic evidence, but that the evidence might not be enough to show that the evidence was not prejudicial. *See United States v. Bolinger,* 837 F.2d 436, 440 (11th Cir.1988) (per curiam); *United States v. Williams,* 568 F.2d 464, 471 (5th Cir.1978).

■ ■ Keeping in mind the "special deference" we owe to the district court's assessment of the effect of the extrinsic evidence, we hold that the district court did not abuse its discretion by denying Mills a mistrial after a juror described Mills's appearance at the time of the alleged crime and gave her opinion of him to the jury. Evaluating the case under the factors announced in *Jeffries,* 114 F.3d at 1491–92,[2] we believe "that the extrinsic evidence did not substantially and injuriously affect the verdict." *Id.* at 1491. The prejudicial statement was "ambiguously

phrased." *Id.* The only extrinsic facts contained in juror Griffin's statements consisted of a physical description of Mills around the time of his arrest. Her statement that he looked like a fat old hippie who probably smoked marijuana was merely her opinion. However, Griffin's opinion was neither admissible nor cumulative. It required remedial action by the trial court, which was taken, and which we hold to have been sufficient on the whole record of this case. As the *Jeffries* court noted, " '[a] timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate.' " *Id.* at 1491 n. 9 (quoting *Bayramoglu v. Estelle,* 806 F.2d 880, 888 (9th Cir.1986)).

The context in which the extrinsic evidence became known to the jury suggests that it was relatively benign. *See id.* at 1492 n. 10. Although the information reached the jurors before they came to a verdict, the jurors had heard all the evidence in the case before hearing juror Griffin's comments in deliberation. As soon as she made the statements, the other members of the jury recognized that the comments were inappropriate and sent a note to the judge requesting advice on how to proceed. The judge promptly instructed them to ignore the information in reaching their verdict.

Finally, "the statement was insufficiently prejudicial, given the issues and evidence in the case." *Id.* at 1492. There was substantial physical evidence in the case that linked Mills to the marijuana

---

**2.** These factors include:

1.  whether the prejudicial statement was ambiguously phrased;
2.  whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial;

3.  whether a curative instruction was given or some other step taken to ameliorate the prejudice;
4.  the trial context; and
5.  whether the statement was insufficiently prejudicial given the issues and evidence in the case.

*Jeffries,* 114 F.3d at 1491–92.

patch, including DNA from hairs found both in his backpack and on the cot at the marijuana patch, shoes and T-shirts in his size found at the site, his fingerprint on the garden hose at the marijuana patch, and cigarette packets that matched those found in Mills's house. Although there was a risk that the contrast between Mills's former appearance as an old hippie who wore pajama-like clothing to the grocery store and his "clean-cut" appearance in the courtroom could undermine Mills's credibility before the jury, we believe that the risk was slight and did not distinguish this case from most others. Popular culture has prepared jurors for the idea that defendants tend to be "cleaned up" in time to go to court. Thus, the fact that the jurors heard that Mills had been "cleaned up" should not have prejudiced him.

## IV. *Apprendi v. New Jersey*

■ Mills also argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because it was enhanced under 21 U.S.C. § 841(b)(1)(B), which did not require that drug quantity be proved to the jury beyond a reasonable doubt, and as a result of a prior conviction that was not proved to the jury beyond a reasonable doubt. This court recently held, en banc, that 21 U.S.C. § 841(b)(1)(B) is not facially unconstitutional under *Apprendi*. *United States v. Buckland*, 277 F.3d 1173 (9th Cir.2002) (en banc).[3] In any event, *Apprendi* specifically exempted prior convictions from its coverage. *See United States v. Pacheco–Zepeda*, 234 F.3d 411, 414 (9th Cir.2000), *cert. denied*, 532 U.S. 966, 121 S.Ct. 1503, 149 L.Ed.2d 388 (2001). Accordingly, Mills's challenge to the statute

is unavailing, and the judgment is AFFIRMED.

---

**3.** While the *Buckland* en banc proceedings were pending, we deferred submission of this appeal.