**UNITED STATES of america,**
Plaintiff—Appellee,

v.

**Marcelo PADILLA–NORIEGA,**
Defendant—Appellant.

No. 02–10620.
D.C. No. CR–00–00801–RCC.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 4, 2003.

Submitted Nov. 20, 2003.

Decided Nov. 25, 2003.

710

---

Bruce M. Ferg, DAG, Sandra Marie Hansen, USTU–Office of the U.S. Attorney, Tucson, AZ, for Plaintiff–Appellee.

Thomas Jacobs, Law Offices of Thomas Jacobs, Tucson, AZ, for Defendant–Appellant.

Before THOMPSON, TROTT, and CALLAHAN, Circuit Judge.

## MEMORANDUM *

Marcelo Padilla–Noriega appeals his conviction for the importation and possession of 16.4 pounds of heroin discovered in his car's brake power boost assembly at a border checkpoint. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I

Padilla claims the district court erred when it denied his motion to suppress the heroin because the heroin was the fruit of an illegal arrest and because it was the product of an unreasonable search and seizure in violation of his rights under the Fourth Amendment. The district court's denial of a motion to suppress is reviewed *de novo*. *United States v. Okafor*, 285 F.3d 842, 845 (9th Cir.2002).

*A. The search was not the fruit of an unlawful arrest.*

■ Even assuming that the detention constituted an illegal arrest, the heroin need not be suppressed because the deten-

tion had nothing to do with the discovery of heroin in the car. *United States v. Martell*, 654 F.2d 1356 (9th Cir.1981)(*cert. denied* 463 U.S. 1213, 103 S.Ct. 3551, 77 L.Ed.2d 1397(1983)). Padilla was placed in a holding cell and there is no suggestion that the agents responsible for searching the vehicle had any contact with Padilla while he was being held. The search would have continued along the same course even if Padilla had been physically released and allowed to continue into the United States or return to Mexico.

*B. The agents had reasonable suspicion before the search became intrusive and nonroutine.*

■ The first act that could be cited as taking the search beyond the routine was the agent reaching in and disconnecting the vacuum hose. *See United States v. Molina–Tarazon*, 279 F.3d 709 (2002). We need not determine whether this act rendered the search "nonroutine," because we conclude that by the time the agents disconnected the vacuum hose, they had reasonable suspicion to support the subsequent search. At that time, in addition to the information gathered by Agent Humphries, the agents had confirmed that the new car's braking system was faulty and they had visual evidence that the screws to the brake power booster had been tampered with and that brake fluid was leaking from the master cylinder. Under the "totality of the circumstances" this amounted to reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

*C. The passage of time did not render the search nonroutine prior to the development of reasonable suspicion.*

Padilla contends that because almost two hours passed before the canine search,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the search became nonroutine before the agents developed reasonable suspicion.

█ The time taken in this case is not unreasonable for a border search. The border search exception, codified at 19 U.S.C. Section 1581(a), provides that a customs agent may "... examine, inspect, and search the vessel or vehicle and every part therefor and any person, trunk, package, or cargo on board ..." During the two hours before the canine search, the agents directed the car to the secondary inspection site, visually inspected the car, drove it to the x-ray facility, x-rayed the car twice, test drove the car to confirm its poor brake functioning, and requested a canine search. Furthermore, the agents sought to confirm their suspicions with non-intrusive searches prior to resorting to intrusive searches.

## II

Padilla contends that a prospective juror expressed extrajudicial facts concerning him in the presence of other jurors and contaminated the entire jury panel. *Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir.1997)(en banc), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). The court in *Jeffries* recognized that various factors can diminish the potential prejudice of extrinsic information so that the evidence does not substantially and injuriously affect the verdict.

The application of these factors to the case at bar shows that the district court properly handled the situation and there is no reasonable possibility that Ms. Bartlett's comments affected the verdict.[1] Ms.

Bartlett's comments were ambiguous and steps were taken to ameliorate the potential prejudice. Furthermore, the evidence against Padilla was overwhelming, and he admitted on the stand that he had a prior felony conviction.

## III

The second prong of Padilla's motion for new trial concerned a government witness's failure to abide by the trial court's *in limine* ruling.

A trial judge has considerable discretion when considering a motion for a new trial, and the denial of such a motion is reviewed for abuse of discretion. *United States v. Kellington,* 217 F.3d 1084, 1097 (9th Cir. 2000); *United States v. English,* 92 F.3d 909, 912 (9th Cir.1996).

The trial judge did not abuse his discretion in denying the motion for a new trial. The agent's improper statement was ambiguous and there was no contemporaneous objection. Also, it does not appear that the improper statement was relevant to any contested issue in the trial.

Finally, the combination of the agent's statement and the potential juror's statement did not require that the trial court grant defendant's motion for new trial.

AFFIRMED

---

1. The applicable standard of review is set forth in *United States v. Mills,* 280 F.3d 915, 921 (9th Cir.2002).