UNITED STATES of America,
Plaintiff–Appellee,

v.

Mounir DALY, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Mamoun Al–Jammal, a.k.a. Mamoun
Al–Jamal, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Samih Fadl Jamal, a.k.a. Sammy;
et al., Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Ibrahim Hassan Elrawy, a.k.a. Effrain,
Defendant–Appellant.

Nos. 05–10718, 05–10719,
05–10728, 05–10729.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 2007.

Filed Aug. 02, 2007.

Linda C. Boone, Esq., Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Nancy L. Hinchcliffe, Esq., Phoenix, AZ, Lynn T. Hamilton, Esq., Mesa, AZ, Donald W. MacPherson, Esq., Glendale, AZ, Michele R. Moretti, Esq., Lake Butler, FL, for Defendant–Appellant.

Ibrahim Hassan Elrawy, Florence, AZ, pro se.

Before: HUG, RYMER, and FISHER, Circuit Judges.

MEMORANDUM *

Mounir Daly, Mamoun Al–Jammal, Samih Jamal, and Ibrahim Elrawy appeal their convictions on charges related to a conspiracy to traffic in stolen infant formula. As there was no reversible error, we affirm.

I

The district court did not abuse its discretion in refusing to sever the trials of Daly, Al–Jammal, and Elrawy from those of each other and Jamal. We review for abuse of discretion, which is found only where "a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *United States v. Sarkisian,* 197 F.3d 966, 975 (9th Cir. 1999). This was not the case here.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

306

Where appropriate and requested, the district court instructed the jury as to the limited admissibility of the evidence complained of. *See United States v. Johnson,* 297 F.3d 845, 855–56 (9th Cir.2002); *United States v. Douglass,* 780 F.2d 1472, 1478–79 (9th Cir.1986). Jurors were not unable to compartmentalize the evidence. Not only did the jury acquit Jamal on several charges, *cf. United States v. Unruh,* 855 F.2d 1363, 1374 (9th Cir.1987), but the district court handled the complexity of the trial by holding bench conferences to regulate the flow of evidence, giving limiting instructions when requested and appropriate, and providing clear guidance at the end of trial in its final instructions. *Johnson,* 297 F.3d at 859–60. Nor was the disparity in charges, or in the evidence introduced, so great as to compel severance. Unlike the situation in *United States v. Donaway,* 447 F.2d 940 (9th Cir. 1971), much of the evidence was admissible against everyone in order to establish the conspiracy and the general workings of the infant formula business.

■■■■ Al–Jammal, and to some extent Daly and Elrawy, also contend that they were prejudiced by Jamal's defense. Whatever frustration may have existed, their defenses were not mutually irreconcilable. *See Johnson,* 297 F.3d at 858–59. Neither did the district court abuse its discretion in denying a mistrial after counsel's reference to September 11; the reference was isolated and undeveloped, the court instructed the jury that statements by counsel are not evidence, and other curative instructions offered by the court were turned down.

## II

■■ Suppression of evidence gathered under the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. § 1801 et seq., was not required for any of the reasons that Jamal posits. *See id.* § 1806(e), (g). Use was authorized, and notice given. *Id.* § 1806(b), (c). Having reviewed the classified documents, we agree with the district court that probable cause existed, *id.* § 1805(a)(3)(A), and that a lawful order covered the date on which the conversation recorded in Exhibit 463 was intercepted, *id.* § 1805(e).

■■ Even if the statements that Jamal points to in the affidavit supporting the search warrant for his home and office were false, he failed to make a substantial preliminary showing that the affidavit's remaining content is insufficient to establish probable cause. *See United States v. Elliott,* 322 F.3d 710, 714 (9th Cir.2003); *United States v. Motz,* 936 F.2d 1021, 1023–24 (9th Cir.1991).

## III

■■■ The court did not abuse its discretion under Fed.R.Evid. 403 and 404 in admitting evidence of a Suspicious Activity Report (SAR) because Al–Jammal opened the door through his cross-examination. *See United States v. Wales,* 977 F.2d 1323, 1326 (9th Cir.1992). Nor did the court abuse its discretion in finding that the government disclosed the SAR evidence as soon as Al–Jammal's cross-examination prompted its use, and accordingly declining to suppress the evidence as a discovery sanction.

■■ Jamal failed to preserve a challenge to admission of Exhibit 463 or to its translation, and there was no plain error. The district court instructed the jury that Exhibit 463 was admissible only against Jamal; Al–Jammal, Elrawy, and Daly thus lack any basis to challenge its admissibility. To the extent they argue that a mistrial should have been granted, the district court was well within its discretion in determining that the motion was untimely;

in any event, it is not obvious that the exhibit was unduly prejudicial.

■ That Elrawy participated in non-formula warehouse burglaries supports an inference that he knew the infant formula involved in this case was stolen. Neither the burglaries nor other incidents involving formula were too remote in time, and there was sufficient evidence of these other acts. Elrawy's defense put his knowledge directly at issue, and the burglaries are not the sort of conduct that provokes an unfairly emotional response from jurors. Therefore, the district court did not abuse its discretion under Fed.R.Evid. 404(b) and 403 in allowing evidence of his connection to warehouse burglaries involving non-formula goods to come in. *See Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Arambula–Ruiz,* 987 F.2d 599, 603 (9th Cir.1993); *United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1327 (9th Cir.1992); *United States v. Mehrmanesh,* 689 F.2d 822, 831 (9th Cir.1982).

## IV

■ The record is insufficient to resolve Jamal's claim of ineffective assistance of counsel on direct appeal. *See United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000). However, we can decide whether there was structural error of the sort recognized in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and we see none. This case is not like *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), upon which Jamal relies. Jamal retained his first attorney more than a year and a half before trial, and his trial counsel was appointed almost five months before trial. Counsel was not hamstrung by limitations imposed under the Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1–16; Jamal fails to demonstrate how his counsel's

inability to discuss information on the tape-recorded conversations to which Jamal himself was a party impinged on his right to counsel with respect to anything relevant and helpful to the defense. *See Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1260–62 (9th Cir.1998).

## V

Jamal failed to preserve any problem of compliance with Fed.R.Crim.P. 16, and has not shown that any particular non-disclosure prejudiced his substantial rights. The potential lack of inculpatory material is not exculpatory, as he seems to contend. There is no plain error.

■ Jamal also contends that the government failed to fulfill its duty under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to learn of favorable evidence contained in intercepted phone conversations. *See Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Jamal did not preserve this issue with respect to any evidence other than the excised portions of the conversation contained in Exhibit 463, and does not challenge the district court's resolution of that particular claim; review is thus for plain error only. Neither the record nor declarations filed by Jamal's counsel establish that the government failed to fulfill its *Brady* obligations with respect to the intercepted conversations. The government made summaries of the conversations available to Jamal's trial counsel in discovery, and trial counsel acknowledged that he could have listened to the tapes as well. Although he was a party to the conversations, Jamal points to no exculpatory evidence and simply speculates that some may exist. No plain error appears.

## VI

■ The district court did not err in dealing with the disclosure that one juror had acquired knowledge of the disposition of related charges against Jamal's brothers and had shared it with other jurors. The juror who initially obtained the extraneous information was excluded from deliberations before they began, and the district court thoroughly, carefully, and timely instructed the jury to disregard whatever it might have learned. In any event, in the context of the entire case the extrinsic evidence was minimally prejudicial; the jury had already (and properly) learned about other close associates of Jamal who had pled guilty. *See United States v. Mills,* 280 F.3d 915, 922–23 (9th Cir.2002).

## VII

■ There was ample evidence to show that Jamal wrote Al–Jammal a series of checks for amounts just under $10,000, which Al–Jammal cashed within short periods of time. Both men were aware of bank reporting requirements and how they could be evaded. Given all the evidence, a rational juror could find beyond a reasonable doubt that Al–Jammal and Jamal were intentionally structuring their transactions to avoid reporting requirements, and knew it was illegal to do so. While jurors could have believed Tamer Swailem's testimony that Jamal thought the USDA form requested only information about felony convictions, they also could rationally have found otherwise from the plain text of the form and Swailem's ready admission that it said nothing about felonies. There was overwhelming evidence, including that provided by Swailem's testimony, from which the jury could have found that Jamal knew he was dealing in stolen formula. There was also sufficient evidence for the jury to conclude that Al–

Jammal knew he was ordering or receiving stolen formula when he got a portion of the Quartzsite deal, including extensive evidence of the close personal and business relationship between Al–Jammal and Jamal, their financial structuring, the low prices paid in deals between the two, Al–Jammal's use of disclaimers, Al–Jammal's suspicious statements to Agent Palumbo regarding his business, and various testimony regarding the nature of the formula business generally. Finally, there was more than enough evidence for the jury to find beyond a reasonable doubt that Elrawy knew of and participated in a conspiracy to transport stolen formula in interstate commerce, including testimony that Elrawy told witnesses he knew he was buying stolen formula, that he had supplied Jamal with formula on multiple occasions, and that in 2002 he had entered into a contract to supply Jamal with formula. Elrawy fails to develop his argument that the jury could have relied on objects of the conspiracy that were legally insufficient, as opposed to factually unsupported (which does not require reversal, *see Griffin v. United States,* 502 U.S. 46, 60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)), and we need not address it. *See Kohler v. Inter–Tel Tech.,* 244 F.3d 1167, 1182 (9th Cir.2001).

## VIII

■ There was sufficient evidence from use of disclaimers, extensive circumstantial evidence that product was stolen, and Swailem's testimony regarding how the formula wholesaling business operated under a "don't-ask-don't-tell" system for the jury to infer that Al–Jammal was deliberately ignorant of the stolen nature of his formula if it disbelieved the government's case that Al–Jammal knew it was stolen. Thus, the district court did not abuse its discretion in giving a *Jewell* in-

struction[1] as to Al–Jammal. *See United States v. Heredia,* 483 F.3d 913, 921–22 (9th Cir.2007) (en banc). Daly, though, was a low-level shoplifter, and the evidence showed that if he were supplying stolen formula, it was he who had stolen it; thus, the district court abused its discretion in giving the instruction as to Daly. But the instruction was plainly harmless; Daly does not dispute that there was sufficient evidence of his actual knowledge, and there is no reason to believe the jury would have thought to apply the instruction to him. *Cf. Griffin,* 502 U.S. at 56–59, 112 S.Ct. 466; *Heredia,* 483 F.3d at 932–33 & n. 2 (Graber, J., dissenting). Daly's several challenges to the legality and content of the instruction are unpreserved and, in light of *Heredia* and the clarity of the instruction, there was no plain error.

AFFIRMED.

1. *United States v. Jewell,* 532 F.2d 697 (9th Cir.1976) (en banc).